# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NDOKEY ENOW, # 435845, 1990859      \*
         \*

Plaintiff,         \*
         \*

v.         \*      Civil Action No.  PWG-16-615
         \*

RICHARD D. DOVEY, Warden,      \*
CPT. YOUNKER,         \*
LT.  COVINGTON,         \*
LT. S. THOMAS,         \*
LT. BRYANT,         \*
SGT. JACKSON,         \*
SGT. M. CUNNINGHAM,      \*
SGT. C. BUTTS,         \*
SGT. COLLIFLOWER,        \*
OFC. C. PETRIE,         \*
         \*

Defendants.         \*
        \*\*\*

## MEMORANDUM OPINION

Pending are Ndokey Enow's verified complaint, ECF No. 1, and verified supplement to the complaint, ECF No. 20, filed pursuant to 42 U.S.C. § 1983.[1]  Along with his pleadings, he

---

[1] Plaintiff Ndokey Enow, who refers to himself in his court filings as "Dr." and "D.Sc./Ph.D.," and evidently has a doctorate from Capitol College, has filed serial (unsuccessful) actions in this Court relating to his conditions of confinement awaiting trial at Montgomery County Correctional Facility ("MCCF"), and (following his conviction for solicitation to commit first degree murder) while confined by the State of Maryland.  His multiple case filings, which impose a significant burden on both the Clerk's office and the Court, have earned him three strikes under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g).  Consequently, he is barred from filing civil actions unless he pays the filing fee or demonstrates that he is in imminent danger of serious physical injury. *See Enow v. Feinstein*, *et al.,* No. PWG-15-3348 (assigning Enow a third "strike" under 28 U.S.C. § 1915(g)).  Undeterred by the application of the PLRA, he since has filed several civil lawsuits, and only a small subset of the claims he has alleged have been found sufficient to proceed under the standard set forth under § 1915(g).  *See Enow v. Baucom, et al.*, No. PWG-16-3553 (D. Md.) (dismissed for failure to address or satisfy "imminent danger" exception to § 1915(g)); *Enow v. Green, et al.,* No. PWG-16-3554 (D. Md.) (dismissed for failure to address or satisfy "imminent danger" exception); *Enow v. Green, et al.*, No. PWG-16-3917 (D. Md.) (dismissed for failure to pay full filing fee and amend complaint);

filed his own affidavit, ECF No. 1-1, the affidavit of a fellow inmate, ECF No. 1-2, and exhibits, ECF Nos. 1-3, 1-4. Enow claims that he was denied his rights under the Eighth and Fourteenth Amendments[2] to the United States Constitution when Defendants failed to protect him from harm by other inmates and denied him medical treatment after an assault. Enow is suing Warden Richard D. Dovey, Lt. Ian Bryant, Lt. Charles Butts, Sgt. John Colliflower, Lt. Kellar Covington, Acting Lt. Michael Cunningham, Sgt. Sydney Jackson, CO II Christopher Petrie, Lt. Steven Thomas, and Captain James Younker. Defendants are correctional administrators and staff at the Maryland Correctional Institution in Hagerstown, Maryland ("MCI-H"), and they are sued in their official and individual capacities.

Defendants have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment ECF No. 22, with a memorandum, ECF No. 22-1, and verified exhibits, ECF Nos. 22-2, 22-3, and declarations, ECF Nos. 22-4 – 22-11, in response to the Complaint. Enow has filed a verified opposition with exhibits, ECF No. 25, 25-1 – 25-6, and he later supplemented the opposition. ECF Nos. 26, 26-1, 27, 27-1, 31-1.[3] Also pending is Enow's Motion to File an Amended Complaint. ECF No. 30. After considering the pleadings, exhibits, and applicable law,

_Enow v. Baucom, et al.,_ No. PWG-16-4042 (D. Md.) (all but two claims dismissed without prejudice for failure to satisfy "imminent danger" standard); _Enow v. Wolfe, et al._, No. PWG-17-341 (D. Md.) (claims satisfied "imminent danger" standard); _Enow v. Foxwell_, No. PWG-17-850 (D. Md.) (claims of past harm dismissed; claims suggesting imminent danger proceeding). He also has filed habeas petitions, which fall outside the auspices of § 1915(g). _See Enow v. Wolfe, et al._, No. PWG-17-50 (dismissed without prejudice for lack of exhaustion); _Enow v. Green_, No. PWG-16-848 (dismissed without prejudice for lack of exhaustion). It is evident that he is attempting to evade the filing fee by claiming, without support (as here), that his claims involve serious threat of physical injury. His serial unsubstantiated claims of physical injury will not go unnoticed and any future cases filed by Enow will be evaluated in light of what is pleaded, but also in light of all the unsubstantiated claims that he has filed to date.

[2] Because Enow was a convicted prisoner during the time at issue, his claim of excessive force arises solely under the Eighth Amendment. _See Whitley v. Albers_, 475 U.S. 312, 327 (1986).

[3] Enow's Motion for Supplemental Evidence in Support of the Plaintiff's Opposition, ECF No. 31, IS GRANTED.

I find a hearing unnecessary to resolve the issues pending before me. *See* Loc. R. 105.6 (D. Md. 2016). Enow's Motion to File an Amended Complaint will be denied because the proposed amendments are futile. Defendants' Motion will be treated as a Motion for Summary Judgment and granted for reasons to follow.

## BACKGROUND

<u>Plaintiff's Claims</u>

Enow is an inmate in the custody of the Maryland Division of Correction and presently incarcerated at the Eastern Correctional Institution ("ECI"). He filed this Complaint on April 22, 2015, alleging that Defendants were negligent[4] by failing to protect him from harm in "January through November of 2015" during the time he was incarcerated at MCI-H. Compl. 1, 5; Supp. Compl. 4. He alleges that Warden Dovey failed to adequately train and supervise prison guards at MCI-H, and that Dovey negligently removed him from protective custody housing. Compl. 10-12; Supp. Compl. 11-12.

Enow alleges that Defendants assigned him to live in cells with dangerous inmates who assaulted him. Compl. 6; Supp. Compl. 4. Specifically, he alleges that he was attacked on November 19, 2015 and November 25, 2015. Compl. 6; Supp. Compl. 4.[5]

Enow alleges that on November 19, 2015, his cellmate Rawl Johnson attacked him. Enow alleges that he suffered a concussion, and Defendants Petrie and Cunningham left him alone while he was unconscious and failed to obtain medical treatment for him. Compl. 6; Supp. Compl. 4. Enow claims that Defendants Cunningham, Jackson, Butts, Younker, Colliflower, and

_____

[4] Because summary judgment will be entered in favor of Defendants, to the extent Enow intends to raise a state law negligence claim, supplemental jurisdiction is declined. *See* 28 U.S.C. § 1367(c)(3).

[5] Enow's medical records show that he claimed involvement in altercations on June 26, 2015 and August 24, 2015. Med. Recs. 71-73, 88-89, ECF No. 22-3. He did not claim either time that he was seriously injured; nor did a medical provider assess him to be in acute distress. *Id.*

Petrie failed to intervene to stop the assault. Compl. 15; Supp. Compl. 13. Further, Enow alleges that Defendants Covington, Thomas, Bryan, and Younker knew that Johnson was violent and had deteriorating mental health, but failed to transfer Enow to another cell. Compl. 14-15; Supp. Compl. 12-13. Enow alleges that Covington failed to come to his aid because Enow was suing the prosecutor and judge who convicted him. Compl. 15. Enow states that he was removed from the cell after the attack, and he alleges that Cunningham then stole his personal property, including photographs and legal reference books. Compl. 7.

Next, Enow claims that on November 25, 2015, his cellmate Christian Thomas attempted to murder him by tying a rope around his neck while he was asleep. Compl. 8, Supp. Compl. 6. Thomas then stabbed Enow's finger. Enow alleges that Cunningham, Jackson, Butts, Younker, Colliflower, and Petrie acted with deliberate indifference to his safety by failing to intervene during the attack. Compl. 15; Supp. Compl. 13. Thomas allegedly told Enow that officers had instructed him to kill Enow and make it look like a suicide. Compl. 9, Supp. Compl. 7. Enow claims that Thomas is a member of the Bloods, which Enow described as a gang that targets inmates identified as government informants or "snitches" for attack. Compl. 9, Supp. Compl. 7.

Enow alleges that Defendants knew there was frequent violence at MCI-H but failed to use available classification information to assign compatible inmates as cellmates and to prevent housing him with gang members. Compl. 16; Supp. Compl. 13. He claims that he has filed a copy of an informal inmate complaint dated November 15, 2015, expressing safety concerns about his cellmate Rawl Johnson, whom he alleged suffers "from psychosis or delusional disorder" and had threatened him with violence. Pl.'s Compl. Exs. 56, ECF No. 1-3; Defs.' Exs. 68, ECF No. 22-2. Enow requested that Johnson be placed in a separate cell. Pl.'s Compl. Exs. 56. The informal complaint does not bear a date stamp or signature to show that it was received

by correctional staff. *Id.*

Enow claims that, as a result of the assaults alleged, he suffered loss of vision in his right eye, a concussion, deep cuts in his mouth, facial lacerations that required stitches, bruises on his face and body, severe pain, migraine headaches, chest pain, ear infection, dizziness, post-traumatic stress disorder ("PTSD"), and depression. Compl. 6; Supp. Compl. 4.

Defendants' Response

Defendants have filed verified exhibits and declarations to refute Enow's allegations. Enow was incarcerated at the Maryland Correctional Institution in Hagerstown, Maryland ("MCI-H") from May 19, 2015 to December 3, 2015. Traffic History, Med. Recs. 10, 12. Review of MCI-H records failed to produce any Serious Incident or Use of Force Reports. McNamee Decl., ECF No. 22-2.[6]

Upon arriving at MCI-H on May 19, 2015, Enow was assigned to Housing Unit 5, the intake unit where Defendant Bryant is manager. Bryant Decl. 1, ECF No. 22-9. Defendant Colliflower also works in Housing Unit 5.[7] Enow was in Housing Unit 5 for two days and then "placed on Administrative Segregation 120, which means that he would have expressed fear for his safety." *Id.* at 2; *see also* Seg. Notice, Defs.' Exs. 59. Bryant acknowledges that he cannot recall any contact with Enow after his transfer to administrative segregation. Bryant Decl. 2. Bryant denies he or other officers knew that "Rawl Johnson was violent and had deteriorating mental health." *Id.* Bryant further states that "[c]orrectional officers are not in a position to

---

[6] Defendants' exhibits show that on January 13, 2015, during the time he was a pretrial detainee housed at the Montgomery County Department of Correction and Rehabilitation and before he was transferred to MCI-H, Enow was assaulted and injured by another inmate, causing him to lose the vision in his right eye. Defs.' Exs. 88-98. Enow does not dispute this assertion.

[7] Defendant Colliflower also works in Housing Unit 5, and states that he works in a different housing unit than where Enow alleges he was attacked. Colliflower's declaration, however, is unsigned. Colliflower Decl., ECF No. 22-11; *see also* Post Assignment Sheet, Defs.' Exs. 16 (showing Colliflower's work post assignment on November 19, 2015).

assess the mental health status of an inmate," and there was no mental health assessment that Johnson was dangerous. *Id.* Bryant declares that he has never intentionally placed Enow in danger or assigned him to share a cell with an inmate known to be dangerous. *Id.* Bryant states that the alleged November 19, 2015 incident occurred in a different housing unit from where he is assigned, and he did not know Rawl Johnson. *Id.* Bryant asserts that he has "never asked an inmate to assault Mr. Enow, and [has] no knowledge of any other correctional officer asking an inmate to assault him." *Id.*

Enow's medical records do not reflect any sick call requests from November 19, 2015 until December 2, 2015, other than a November 21, 2015 sick call request in which Enow complained of food poisoning but did not mention the concussion he alleges to have suffered two days earlier. Med. Recs. 178. On December 2, 2015, Enow filed a sick call slip, complaining that he had suffered a concussion on November 19, 2015, when he was assaulted by Rawl Johnson, passed out, bled from his nose and mouth. *Id.* at 177. He asserted that, as a result, he suffers from migraines and headaches. *Id.* The sick call slip was stamped as received on December 3, 2015. *Id.*

The medical records show that following the November 25, 2015 incident, Enow was taken to the medical unit for a laceration to a finger on his right hand. *Id.* at 120-26; 203-10. Enow was transported to an emergency room outside the prison where he received an x-ray and sutures. *Id.*

Defendants have filed copies of correctional staff work assignment sheets for November 19, 2015 and November 25, 2015. *Id.* at 16-56. Those assignment sheets establish that Defendants Covington and Steven Thomas were not on the work schedule for either day. *Id.* Defendants Butts and Cunningham were not on the schedule for November 25, 2015. *Id.* Enow

does not dispute this assertion.

Additionally, Defendant Covington states that he was not at work on November 19, 2015 or November 25, 2015. Covington Decl., ECF No. 22-4; *see also* Work Assignments, Defs.' Exs. 16, 17. Covington states:

> Mr. Enow was difficult to place with other inmates and to keep him safe. He considered himself better educated than other inmates, and he would say things to other inmates that would irritate them and instigate altercations. Most, if not all, of Mr. Enow's problems were self-inflicted.
>
> Mr. Enow frequently felt threatened and would go to officers to inform them of feeling threatened. Generally the threat was perceived but not actual. In some instances, Mr. Enow would publically point out the inmates that he considered a threat. On one occasion, Mr. Enow felt threatened in the chow hall, went to correctional officers and began pointing out three inmates.
>
> One of the other inmates was Christian Thomas, who later became Mr. Enow's cell mate. Mr. Enow believed that, as a fellow African, Mr. Thomas should support him, but Thomas was not interested.
>
> The inmates that Mr. Enow accused had to be placed on administrative segregation pending investigation whether they had threatened Mr. Enow. His claims of assault threats from the three inmates were inconsistent. He claimed that there was a weapon, but no weapon was found on any of the inmates. The investigation did not find anyone that had seen the inmates together with Mr. Enow to threaten him. Mr. Enow was assigned to a psychiatric evaluation. The investigation failed to reveal any actual threats, and the three inmates were absolved of any responsibility.
>
> Mr. Enow's habit of publicly pointing out supposed threats, particularly including the chow hall incident, result in the feeling that he was a "snitch." Correctional officers did not label Mr. Enow a "snitch." However, his own actions led some inmates to consider him a snitch.

Covington Decl. 2-4.

Covington notes that Enow was on administrative segregation at least twice for his protection after he instigated altercations. *Id.* at 3. Covington explains that in October 2015, Enow "was assigned to share a cell with Rawl Johnson . . . specifically because Johnson was passive and non-threatening." *Id.* Covington denies that he "knew that Mr. Johnson was violent

and of deteriorating mental health, but refused to transfer Mr. Enow" to a different cell. *Id.*

Covington states that Johnson was "not dangerous." *Id.* Covington states that he "had no

knowledge of [Enow's] ongoing legal actions" and denies that he "failed to help Mr. Enow

because he was suing the prosecutor and judge who convicted him." *Id.* Further, Covington

declares that he never intentionally acted to place Enow in danger or assigned him to share a cell

with a known dangerous inmate. *Id.* Covington notes that "[c]orrectional officers are not in a

position to assess the mental health status of an inmate," and there was no evaluation by a

medical provider indicating that Johnson was dangerous. *Id.*

Defendant Christopher Petrie states that Enow "had difficulty with other inmates." Petrie

Decl. 1, ECF No. 22-5. According to Petrie, Enow "was better educated and said things that

angered other inmates, and then he would exaggerate the resulting incidents." *Id.* Petrie was

working as an administrative segregation escort on November 19, 2015 and November 25, 2015.

*Id.* at 2. Petrie denies that he and other officers failed to intervene during the alleged attack on

November 19, 2015. *Id.* Petrie declares that Enow "had a verbal altercation with his cell mate

Rawl Johnson" about a food tray. *Id.* Petrie recalls that he and Sergeant Cunningham, who were

"the only correctional officers in the area," separated the cellmates. *Id.* Sergeant Cunningham

moved Enow to the recreation room across the hallway. "After feed up, Mr. Enow threatened to

fight Mr. Johnson, so [Petrie and Cunningham] relocated him to a different cell." *Id.*[8] Petrie

also denies depriving Enow of access to medical treatment. Petrie attests that "during the

incident, I did not see Mr. Johnson assault Mr. Enow, and there was no indication that he had

---

[8] While packing Enow's property for the move, Petrie discovered a sock with a plastic bottle filled with liquid under Enow's mattress. Petrie Decl. 2. Petrie determined that it was contraband and wrote Enow a notice of rule violation for possession of a weapon. Defs.' Exs. 71-76. A hearing officer later found Enow not guilty of the violation, believing Enow's contention that he used it to heat his knee. *Id*. at 76.

been assaulted.  Mr. Enow did not request to be taken for a medical evaluation." *Id.*

Petrie explains that because the altercation was verbal and there was no indication of physical assault, there was no need to file a serious incident report or escort either inmate to the medical unit for evaluation.  *Id.* at 2-3. Petrie states that, as the escort officer, he "remember[s] taking Mr. Enow for a medical evaluation for a cut finger," but cannot remember "any details or whether there was an actual assault." *Id.* at 3.  Petrie recalls that "Thomas was there and was relocated," and "to the best of [his] knowledge, there is no record of an assault." *Id.*  Petrie attests that he never intentionally acted to endanger Enow and "never assigned him to share a cell with a known dangerous inmate." *Id.*  Petrie attests that he has "never asked an inmate to assault Mr. Enow and [has] no knowledge of any other correctional officer asking any inmate to assault Mr. Enow." *Id.*

Defendant Charles Butts denies Enow's allegations against him.  Butts Decl., ECF No. 22-6.  On November 19, 2015, Butts was a timekeeper working out of an operations center in the main building, which is separate from the administrative segregation unit.  Butts was not on the tier and had no interaction with Enow or his cellmate.  *Id.*  Butts was not at work on November 25, 2015.  Butts attests that he has never intentionally acted to endanger Enow, "never assigned him to share a cell with a known dangerous inmate[,] . . . never asked an inmate to assault Mr. Enow, and [has] no knowledge of any other correctional officer asking an inmate to assault Mr. Enow." *Id.*

Defendant James Younker is a shift commander.  Younker Decl. 1, ECF No. 22-7.  He works in an office adjacent to the operations center in the main building at MCI-H, which is separate from the administrative segregation housing unit.  *Id.* Younker asserts that on November 19, 2015, he was not on the tier and had no interaction with Enow or his cell mate.  *Id.* at 1-2.

Younker was not at work on November 25, 2015. *Id.* at 2. Younker denies that he knew Rawl Johnson was violent or that his mental health was deteriorating, and states that correctional officers do not assess inmate mental health status and that no medical professional had assessed Johnson to present any danger. *Id.* Younker states that when he assigns cell mates, he "evaluate[s] safety issues, including gang affiliation." *Id.* Members of different gangs are not assigned together, but non-gang members are assigned "to share cells with gang members because there is no gang conflict." *Id.* He attests that he never intentionally acted to endanger Enow, "never assigned him to share a cell with a known dangerous inmate[,] . . . never asked an inmate to assault Mr. Enow, and [has] no knowledge of any other correctional officer asking an inmate to assault Mr. Enow." *Id.*

Defendant Steven Thomas denies Enow's allegations and states he was not at work on November 19, 2015 or November 25, 2015. Thomas Decl. 1, ECF No. 22-8. Thomas attests he has "no recollection of any interaction with him." *Id.* at 2. Thomas denies that he and other officers knew Rawl Johnson was dangerous and had deteriorating mental health, and states that he has never intentionally endangered Enow, assigned him to share a cell with a known dangerous inmate, asked an inmate to assault Enow, and has no knowledge of any officer asking an inmate to assault Enow. *Id.* Thomas states that correctional officers do not assess inmate mental health status and no medical professional had assessed Johnson to present any danger. *Id.*

Defendant Michael Cunningham denies that he and other officers failed to intervene when Enow was allegedly attacked on November 19, 2015. Cunningham Decl. 1, ECF No. 22-10. Cunningham states "Enow had a verbal altercation with his cell mate, Rawl Johnson . . . over who would get which food tray." *Id.* at 2. Cunningham recalls that he and Officer Petrie "were the only correctional officers in the area." *Id.* The officers separated Enow and Johnson,

and Cunningham moved Enow to the recreation area. *Id.* Cunningham states that he "did not see Mr. Johnson assault Mr. Enow, and there was no indication that he had been assaulted." *Id.* Moreover, "[h]e could not have been speaking to another inmate in the hallway, as he alleges, because movement in the segregation unit is strictly controlled." *Id.* According to Cunningham, Enow "was not unconscious as alleged, and he willingly cuffed up." *Id.*

Cunningham "den[ies] depriving Mr. Enow of access to medical treatment needed for the alleged physical assault by Mr. Johnson upon Mr. Enow." *Id.* at 2. He states that, "[b]ecause this was a verbal altercation and no indication of an assault, there was no need to file a serious incident report or take either inmate for a medical evaluation." *Id.*

Cunningham was off work on November 25, 2015, and therefore denies that he failed to intervene in the November 25, 2015 incident involving Enow and Christian Thomas. *Id.* Cunningham states that he has never intentionally endangered Enow, "assigned him to share a cell with a known dangerous inmate[,] . . . asked an inmate to assault Mr. Enow, and [has] no knowledge of any other correctional officer asking an inmate to assault Mr. Enow." *Id.* at 2-3.

## ADMINISTRATIVE REMEDY REQUESTS

Enow alleges that unnamed prison guards purposely failed to provide him administrative remedy procedure ("ARP") forms to prevent him from reporting officer misconduct. Compl. 11. Enow claims that he filed ARP requests on November 20, 2015,[9] November 26, 2015 (concerning the Thomas assault), December 1, 2015 (complaining that he was denied medical treatment), and December 7, 2015 (concerning access to his medical records), but received no response from Warden Dovey. Compl. 2-3. Enow asserts that his ARP requests "went moot" when on December 3, 2015, he was transferred to ECI. *Id.*; Supp. Compl. 2.

_____

[9] Enow does not identify the subject of this ARP, and it is not among the ARPs listed in his prison record.

On November 20, 2015, Enow filed ARP MCI-H 722-15, alleging that Officer Cunningham had stolen two legal reference books and personal items during the cell move on November 19, 2015. Defs.' Exs. 3-4. The ARP, however, contains no mention of the November 19, 2015 assault. On November 20, 2015, the ARP coordinator dismissed the ARP for insufficient information pending resubmission by December 15, 2015. *Id.* The records do not contain a resubmission of this ARP request.

In ARP MCI-H 760-15, dated November 26, 2015, Enow alleged that since his arrival at MCI-H on May 19, 2015, he had been placed in cells with "very violent inmates, gang members, and have constantly been abused and assaulted by these inmates." *Id.* at 5-8. Enow stated that he was attacked by Rawl Johnson on November 19, 2015 and by Christian Thomas on November 25, 2015. Enow described Thomas's attack as occurring during the course of a conversation during which Enow threatened to write a report against Thomas. *Id.* at 7. "That was when Christian jump [sic] up from his seating [sic] position, put on his sneakers, grab a rope (piece of cloth) to try to tie around my neck in order to choke me." *Id.* Enow explains that while he was talking and pointing his finger, Thomas grabbed the finger and tried to fracture it and caused it to bleed. *Id.* The ARP was received in the Warden's Office on December 2, 2015. On December 7, 2017, the ARP coordinator dismissed it for procedural reasons, because "[i]nmates may not seek relief through the Administrative Remedy Procedure on Case Management recommendations and decisions," and "Administrative Segregation is Case Management." *Id.* at 5-8.

On November 30, 2015, Enow filed ARP MCI-H 765-15, complaining that he had been denied access to the medical unit on that day, and that on November 19, 2015, he had been denied access to his seized property. He provided no other details. *Id.* at 2; *see also* Pl.'s Compl.

Exs. 26. On December 8, 2015, ARP MCI-H 765-15 was dismissed for failing to contain sufficient information pending resubmission by December 23, 2015. *Id.* The records do not contain a resubmission of this ARP request.

## MOTION TO AMEND

Enow filed the pending Motion for Leave to File an Amended Complaint after Defendants filed their dispositive motion. Enow states generally that he wants to amend the Complaint to raise claims under the Americans with Disabilities Act, 42 U.S.C. § 1201 *et seq.*, section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. § 10802, although he provides no further explanation. Rule 15(a)(2) provides that a party may amend its pleading only with the opposing party's written consent or the court's permission. Fed. R. Civ. P. 15(a)(2). The rule specifies that the court should freely give leave when justice requires. However, "a district court may deny leave if amending the complaint would be futile-that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (citing *United States ex re. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)). The proposed amendment is futile; Enow simply attempts to reframe his allegations by citing without explanation various federal statutes. He has not provided an explanation regarding how those statutes were violated or otherwise stated a claim under those statutes.

## SUMMARY JUDGMENT – STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations..., admissions, interrogatory answers, or other

materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro,* 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id*.

If this initial burden is met, the opposing party may not rest on the mere allegations in the complaint. *Id.* at 247–48. The opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. *Anderson*, 477 U.S. at 248–49.

The argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id.* "If the evidence is merely colorable or is not significantly probative," summary judgment is appropriate. *Id*. at 249–50 (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt [the moving party's] version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

On a motion for summary judgment, I consider the facts in the light most favorable to Enow as the non-moving party, drawing all justifiable inferences in his favor. *Ricci v. DeStefano,* 557 U.S. 557, 585–86 (2009).

## DISCUSSION

Defendants argue that they are entitled to summary judgment based on Enow's failure to exhaust administrative remedies, Eleventh Amendment immunity, and respondeat superior, and because his allegations fail to support a constitutional claim. Defs.' Opp'n.[10]

While Enow has flooded the docket with filings in reply to Defendants' dispositive motion and exhibits, he does not refute Defendants' declarations and verified work assignment records concerning their whereabouts during the November 19, 2015 and November 25, 2015 incidents.  Of all the defendants whom Enow claims were present at the November 19, 2015 incident and/or failed to intervene (Cunningham, Jackson, Butts, Younker, Colliflower, and Petrie), only Petrie and Cunningham actually were present.  Of all the defendants Enow claims were involved in or failed to intervene in the November 25, 2015 incident (Cunningham, Jackson, Butts, Younker, Colliflower, and Petrie), only Petrie was present.  Accordingly, Jackson, Butts, Younker, and Colliflower are entitled to summary judgment in their favor, and Cunningham is entitled to summary judgment in his favor with regard to the November 25, 2015 incident.

### Exhaustion of Administrative Remedies

Defendants argue that Enow has not properly presented his claims through the administrative remedy procedure, and therefore the claims must be dismissed pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Section 1997 of the Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

---

[10] Defendants also assert qualified immunity as an affirmative defense. Defs.' Opp'n. Because I have not found any constitutional violation, I will not address qualified immunity.

exhausted." 42 U.S.C. § 1997e(a). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (noting that exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners "pursue administrative grievances until they receive a final denial of their claim, appealing through all available stages in the administrative process." *Chase v. Peay,* 286 F. Supp. 2d 523, 530 (D. Md. 2003); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief").

Exhaustion is mandatory and therefore, a court ordinarily may not excuse a failure to exhaust. *Ross v. Blake*, --- U.S. ----, 136 S. Ct. 1850, 1856–57 (2016) (citing *Miller v. French,* 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")); *see Jones*, 549 U.S. at 220. And, typically, an

inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729. Yet, the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). For example, "housing assignments involve case management decisions that are not addressed through the ARP; rather, case management decisions are to be addressed directly to the IGO [Inmate Grievance Office]," and therefore administrative remedies need not be exhausted for complaints about housing assignments. *Gabriel v. DeVore*, No. JKB-16-471, 2017 WL 371801, at *8 (D. Md. Jan. 26, 2017); *see also Hurt v. White*, No. DKC-14-1315, 2015 WL 1522944, at *10 (D. Md. Apr. 1, 2015) ("To the extent this claim raised a case management issue regarding Plaintiff's enemies list and his housing assignment, it was not addressable through the ARP process and the claim is exhausted."), *appeal dismissed* (June 12, 2015).

In *Ross*, the Supreme Court reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" 136 S. Ct. at 1855. The Fourth Circuit addressed the meaning of "available" remedies in *Moore*, 517 F. 3d at 725, stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell,* 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo,* 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809

(7th Cir. 2006).

In *Ross*, the Supreme Court explained that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S. Ct. at 1859 (quoting *Booth,* 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. As a prisoner, Enow is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The Supreme Court has outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." *Ross*, 136 S. Ct. at 1859. These are: (1) when the remedy operates as a "simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is so "opaque" as to be "practically speaking, incapable of use"; and (3) when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859–60.

The Department of Public Safety and Correctional Services ("DPSCS") has made an "administrative remedy procedure" ("ARP") available to Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann., Corr. Servs. §§ 10-201 *et seq*.; Code Md. Regs. 12.07.01.01B(1) (defining ARP). The grievance procedure applies to the submission of

"grievance[s] against . . . official[s] or employee[s] of the Division of Correction."  Corr. Servs. § 10-206(a).

Judge Hollander provided a thorough description of the process in *Aurel v. Mailroom North Branch*, noting that "[a]n inmate 'must exhaust' the ARP process as a condition precedent to further review of the inmate's grievance." No. ELH-14-2813, 2016 WL 3957647, at *7–9 (D. Md. July 21, 2016) (quoting Corr. Servs. § 10-206(b); citing Code Md. Regs. 12.07.01.02.D; DCD 185-002 (effective Aug. 27, 2008)). To exhaust the ARP process, the inmate must "complet[e] . . . 'the administrative review process in accordance with the applicable procedural rules, including deadlines.'"  *Id.* at *7 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006)).

In DOC facilities, such as WCI, a prisoner must follow a three-step institutional ARP process.[11] *Id.* at *8 (citing Corr. Servs. § 10-206(b); OPS.185.0002.02).[12] First, a prisoner must file an ARP request with the warden "within 30 days of the date on which the incident occurred,

---

[11] The exceptions to this institutional exhaustion requirement are not relevant here.  They include complaints about case management decisions, complaints about "Maryland Parole Commission procedures and decisions to withhold mail," claims related to the Prison Rape Elimination Act, and complaints relating to procedures for prisoner disciplinary proceeding and the decisions reached following such proceedings.  *Id.* at *8–9 (citing OPS.185.0002.05F(1), (2),(4),(5), OPS.185.0002.05C(3)). Additionally,

> [w]hile a prisoner may pursue the ARP process to allege that correctional officers used excessive force, such ARPs may be procedurally dismissed if the Internal Investigations Division ("IID") has decided to conduct an investigation into the use of force incident at issue in the ARP. OPS.185.0002.05.E(6) & K(3)(e). If this procedural dismissal indicates that no further action may be taken through the ARP process, a prisoner may then file a grievance directly with the IGO, as there would be no further administrative remedies available through the ARP process. [C].S. § 10-206(b).

*Id.* at *9.

[12] "OPS.185.0002 is an Executive Directive created by the Maryland Department of Public Safety and Correctional Services."  *Aurel*, 2016 WL 3957647, at *7 n.8 (noting that the Directive appears at ECF No. 16-2 in *Payton v. Bishop*, No. ELH-15-3648); *see* Fed. R. Evid. 201(b)(2) (permitting judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later." *Id.* (citing OPS.185.0002.05C(1); DCD # 185-003VI; Code Md. Regs. 12.07.01.05A). Second, if the warden denies that request, "the prisoner has 30 days to file an appeal with . . . the Commissioner of Correction." *Id.* (citing OPS.185.0002.05C(2); DCD # 185-004VI). Third, "[i]f the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO." *Id.* (citing OPS.185.0002.05D; Corr. Servs. §§ 10-206(a), 10-210; Md. Code Regs. 12.07.01.05B; DCD 185-002, § VI(N)(1)). If the grievance filed with the IGO "is determined to be 'wholly lacking in merit on its face,' the IGO may dismiss it without a hearing." *Id.* (quoting Corr. Servs. § 10-207(b)(1)).

> An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208(2)(c); COMAR 12.07.01.07-.08. ...
>
> A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(i) & (ii); COMAR 12.07.01.10A. However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)(2), (c).

*Id.* The administrative exhaustion requirement then is satisfied, even though the prisoner may choose to (but need not) appeal to Maryland state court. *Id.*

Relevant to the claims he presented in this case, Enow filed ARP MCI-H 722-15, alleging that Cunningham took two legal reference books and personal items during the cell move on November 19, 2015, although it contained no mention of a November 19, 2015 assault. Defs.' Exs. 3-4. In ARP MCI-H 765-15, he alleged that he had been denied access to the medical unit and to his seized property. *Id.* at 2. These ARPs were dismissed because Enow provided

insufficient information, and the records do not contain a resubmission of either form with additional information as Enow was instructed to do. Nor is there any evidence that he availed himself of the other levels of administrative review. Thus, Enow has not provided any evidence that he attempted to exhaust his administrative remedies beyond the preliminary steps demonstrated here. Additionally, he has not provided a factual or legal basis for his assertion that these ARPs became "moot" upon his December 3, 2015 transfer to ECI or that his transfer was intended to thwart his efforts to exhaust his administrative remedies. Notably, Enow does not claim the process was no longer available to him. Therefore, the claims presented in these ARPs must be dismissed because he failed to exhaust them. *See* 42 U.S.C. § 1997e(a); *Ross*, 136 S. Ct. at 1855–57; *Aurel*, 2016 WL 3957647, at *8.

In ARP MCI-H 760-15, Enow alleged that since his arrival at MCI-H, he had been placed in cells with "very violent inmates, gang members, and ha[d] constantly been abused and assaulted by these inmates"; he also alleged that he was attacked by Rawl Johnson on November 19, 2015 and by Christian Thomas on November 25, 2015. *Id.* at 5-8. Unlike his other claims, relief was not available through the administrative remedy procedure for this claim, and therefore this claim is not subject to dismissal for failure to exhaust. *See Gabriel*, 2017 WL 371801, at *8; *Hurt*, 2015 WL 1522944, at *10. But, all of his claims are unavailing nevertheless for reasons to follow.

Eleventh Amendment Immunity

Enow is suing Defendants in their official and individual capacities. Compl.; Supp. Compl. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal

citations omitted). Defendants argue that they are protected from suit in their official capacities under the Eleventh Amendment to the United States Constitution, which provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." In effect, the Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived its sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). States and their officers, sued in their official capacities, are not "persons" subject to suit for money damages under 42 U.S.C. § 1983. *Will*, 491 U.S. at 71.

Although the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Defendants were state employees during the time period at issue, and thus, Enow's claims for monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment. *See Will*, 491 U.S. at 71; *Pennhurst State Sch. & Hosp. v,* 465 U.S. at 101–02.

<u>Respondeat Superior</u>

Liability is imposed under § 1983 on "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights . . . ." 42 U.S.C. § 1983. The statute requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 690 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.

1977) (stating that, for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights") (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)). Moreover, an individual cannot be held liable under 42 U.S.C. § 1983 under a theory of respondeat superior. *See Monell*, 436 U.S. at 690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (noting that "there is no respondeat superior liability under § 1983"); *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (stating that liability of supervisory officials "is not premised on respondeat superior").

In a § 1983 action, liability of supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan*, 737 F.2d at 372). Supervisory liability under § 1983 must be supported with evidence:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

Enow claims that Warden Dovey is liable for failing to adequately train and supervise MCI-H corrections officers and that he "knowingly and negligently removed plaintiff deliberately from protective custody status" even though he had been informed by psychology staff and senior corrections officers that Enow needed protective custody housing. Compl. 10-

11, 14; Supp. Compl. 11-12. Apart from Enow's unsubstantiated allegations,[13] he provides no evidence that Dovey was aware that he was in danger and needed protective custody. Certainly, there is a June 2, 2015 letter from the Social Work Department stating that his "request reporting that [he was] being housed near an inmate that [he] report[ed] assaulted [him]" had been received and would be "forward[ed] . . . on to the Intel Office for them to handle as they see fit," Pl.'s Exs. 66, and Enow was "placed on Administrative Segregation 120 [in May 2015], which means that he would have expressed fear for his safety." Bryant Decl. 2.

But, there is no evidence that Dovey, the warden of a large prison facility, was aware of Enow's purported housing needs. Nor is there evidence that Dovey's conduct was sufficient to confer supervisory liability. It also bears noting that when Enow's claims of danger were presented to prison authorities, they were investigated and he was placed in administrative segregation to ensure his safety. *See, e.g.*, Admin. Seg. Notices, Defs.' Exs. 59-70; *see also* Bryant Decl. 2 (stating that Enow was "placed on Administrative Segregation 120, which means that he would have expressed fear for his safety"); Covington Decl. (describing investigation of chow hall incident). Warden Dovey is entitled to summary judgment on the claims against him. *See Shaw*, 13 F.3d at 799.

---

[13] Enow cites "attached medical records and notice of assignments to administrative segregation CMM-18 document." Compl. 14. Yet the November 25, 2015 and June 25, 2015 Notices of Assignment to Administrative Segregation state that Enow was "remove[d] . . . from general population and assign[ed] . . . to administrative segregation" because "[a]n investigation [wa]s pending in [his] case"; they did not state that he was removed for his safety. Pl.'s Exs. 58, 61. And, the September 23, 2015 and May 21, 2015 Notices stated that Enow was removed because "[r]easons exist[ed] to believe that [*he* was] dangerous to *the security of the institution and/or inmates and/or staff*," not that *they* were a danger to *him*. *Id.* at 59 (emphasis added); *see also id.* at 62 (same). Similarly, the August 24, 2015 Notice stated that Enow was removed because "[r]easons exist[ed] to believe that [he was] dangerous to the security of the institution and/or inmates and/or staff," because "[a]n investigation [wa]s pending in [his] case," and because he was "being considered for placement on voluntary or involuntary protective custody." *Id.* at 60.

<u>Loss of Property</u>

Even if a plaintiff "has been deprived of property under color of state law," there is no due process violation if "the deprivation did not occur as a result of some established state procedure" and "'an adequate state remedy' " exists to redress, post-deprivation, any "'property damage inflicted by state officers." *Parratt v. Taylor*, 451 U.S. 527, 542–44 (1981) (quoting *Bonner v. Coughlin*, 517 F.2d 1311, 1319 (7th Cir. 1975)), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Juncker v. Tinney*, 549 F. Supp. 574, 576 (D. Md. 1982) ("[I]f plaintiff has an adequate post-deprivation remedy in state court, that should satisfy the requirements of due process and plaintiff should not be permitted to bring a § 1983 claim in federal court."). The Supreme Court extended its *Parratt* holding to intentional deprivations of property. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Enow does not allege that the deprivation occurred due to an established state procedure. And, "Plaintiff may seek relief through the Maryland[ ] Tort Claims Act and the Inmate Grievance Office." *Mcclain v. Shell,* No. JFM-09-3053, 2010 WL 4485896, at *2 n.2 (D. Md. Nov. 9, 2010). This "right to seek damages and injunctive relief in Maryland courts constitutes an adequate post-deprivation remedy*." Id.* at *2. Thus, to the extent that Enow alleges that his personal property was improperly taken, he fails to state a constitutional claim. *See Parratt*, 451 U.S. at 542–44; *Mcclain*, 2010 WL 4485896, at *2 & n.2; *Juncker,* 549 F. Supp. at 576.

Regarding Enow's allegations concerning loss of legal reference materials, he does not allege injury sufficient to state a denial of access to the courts claim, because he fails to claim he suffered any actual injury. *See O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)).

<u>Eighth Amendment Claims</u>

Defendants argue that they are entitled to summary judgment because there was no Eighth Amendment violation for failure to protect or to deny Enow medical care. The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. A prison official violates the Eighth Amendment when the official shows "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104; *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). An inmate also has an Eighth Amendment right to be protected from violence perpetrated by other prisoners. *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014); *Farmer v. Brennan*, 511 U.S. 825, 833-35 (1994). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). To that end, "[p]rison officials are . . . obligated to take reasonable measures to guarantee inmate safety." *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015).

 For a prison official to be found liable under the Eighth Amendment, "the official [must know] of and disregard[ ] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *Farmer*, 511 U.S. at 834, 837.

Objectively, the inmate "must establish a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury' or substantial risk to either injury." *Danser*, 772 F.3d at 346–47 (quoting *Farmer*, 511 U.S. at 834). Subjectively, the inmate must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to

"deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (citations omitted). Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id.* at 837. Where prison officials responded reasonably to a risk, they may be found free of liability. *Id.* at 844. A prison official's subjective actual knowledge [of a risk] can be proven through circumstantial evidence. . . ." *Makdessi*, 789 F.3d at 133.

Despite both sides' production of extensive medical and prison records, there is no evidence beyond Enow's own assertions that he was assaulted by Rawl Johnson, knocked unconscious, and then denied medical care. The absence of a prison medical record or incident report when such records and reports regularly were kept is evidence that the altercation and injury did not occur. *See* Fed. R. Evid. 803(a)(7). As noted, although Enow claims Defendants Cunningham, Jackson, Butts, Younker, Colliflower, and Petrie failed to intervene to stop the assault, only Cunningham and Petrie were in the area, and they offered evidence that the altercation was verbal not physical. Cunningham states that Enow was not unconscious and "willingly cuffed up." Enow filed a sick call slip on November 21, 2015, two days after the purported assault concerning food poisoning, but tellingly made no mention of suffering a concussion or assault two days earlier. Defs.' Exs. 178. When Enow filed ARP MCI-H 722-15 on November 20, 2015, the day after the alleged assault, he made no mention of an assault, concussion, or denial of medical care.

Enow fails to show Defendants knew of and disregarded an excessive risk to him posed by either cellmate Rawl Johnson or Christian Thomas. In fact, most of the Defendants attest that they had little or no involvement with Enow. Of the Defendants who did, they have provided

evidence of actions taken to ensure Enow's safety. Covington placed Enow in administrative segregation for much of the time he was housed at MCI-H for his safety, and placed him with Rawl Johnson who was known to have a passive demeanor. Once Petrie and Cunningham became aware that Enow and Johnson were arguing, they separated the cellmates and relocated Enow. Enow does not provide any evidence, apart from his assertion that Christian Thomas is a member of a gang, to show that Christian Thomas was known to pose a threat to him. And, Covington explains that non-gang members may be housed with members of gangs; it is only when two or more potential cellmates are members of different gangs that they are not housed together. Additionally, it is undisputed that, after Enow and Thomas fought, Enow was promptly escorted for medical attention. Defendants uniformly deny acting to endanger Enow, knowingly placing him with a dangerous inmate, and instructing Christian Thomas to attack Enow. Enow's Eight Amendment claims cannot withstand Defendants' summary judgment motion. *See Farmer*, 511 U.S. at 837.

## CONCLUSION

Against this background, even when the facts are viewed in a light most favorable to Enow, his self-serving, unsubstantiated allegations are contradicted by the record. Enow fails to show that Defendants acted with the requisite deliberate indifference to his safety or health to premise a claim of Eighth Amendment violation for failure to protect or failure to provide medical care, and there are no genuine disputes of material fact whether a constitutional violation has occurred. Accordingly, Defendants' Motion for Summary Judgment will be granted in a separate Order.

June 12, 2017                                    _____/S/_____
Date                                             Paul W. Grimm
                                                 United States District Judge